IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

CARLOS MONTANA WILLIAMSON                                                                          PLAINTIFF

v.                                          Civil No.: 6:18-CV-06041

MARK A WALTERS (Correctional Officer,                                                              DEFENDANTS
Arkansas Department of Correction)

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Robert T. Dawson, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is Defendant's Motion for Summary Judgment. (ECF No. 69).

**I. BACKGROUND**

Plaintiff filed his Complaint on May 3, 2018, in the Eastern District of Arkansas. (ECF No. 1). It was transferred to this District on May 7, 2018. (ECF No. 5). On May 8, 2018, the Court granted Plaintiff *in forma pauperis* status, and directed Plaintiff to file an Amended Complaint. (ECF Nos. 8, 9). Plaintiff filed his Amended Complaint on May 18, 2018. (ECF No. 12).

Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC") Varner SuperMax Unit. His Complaint centers on his time in the ADC Ouachita River Unit, where he alleges his federal constitutional rights were violated by the use of excessive force against him and a subsequent disciplinary conviction. (ECF No. 12 at 4-10.) Plaintiff alleges that on February 6, 2018, he was escorted to the day clinic for flu symptoms. (*Id*. at 4-55). He alleges the nurse

1

"yell[ed]" at him and gave him pain medication instead of mucous medication. (*Id*. at 4-5, 18). He then went to the security desk for his I.D. card. Defendant Mark Walters approached him and asked to see his I.D. card. Defendant alleges Defendant Walters started "yelling" at him and became verbally aggressive. (*Id*.) Walters then gave him a direct order to submit to being handcuffed, but Plaintiff felt threatened and instead asked Walters to call the Lieutenant and Sergeant. (*Id*. at 6). Plaintiff alleges Walters had a history of "jumping on" mentally ill inmates. When Walters reached for Plaintiff's wrist "real rough like" Plaintiff "tuck[ed] back" and again asked him again to get the Lieutenant and Sergeant. (*Id*.). Plaintiff alleges Defendant Walters then shoved him, knocking him to the ground and causing him to hit his head. (*Id*. at 7). When Plaintiff got to his feet, Defendant Walters approached him in an aggressive manner, so Plaintiff struck him with a closed fist. Walters then struck back with a closed fist. (*Id*.). Plaintiff alleges Walters used unnecessary force against him, starting with the shove, and Plaintiff only defended himself. (*Id*. at 8). Plaintiff suffered cuts and bruises from the incident. (*Id*.).

Plaintiff alleges Defendant Walters lied in the report about the incident, resulting in a disciplinary conviction. (*Id*.) Plaintiff alleges Defendant Golden Daniel Wayne[1] reviewed a download[2] of the incident rather than taking his statement. (*Id*.) Plaintiff appealed the disciplinary charge, but the Hearing Administrator affirmed it. (*Id*. at 9). Plaintiff alleges he filed a grievance but did not get a response. (*Id*.).

Plaintiff attached copies of his disciplinary and grievance documents to his Complaint. (*Id*. at 17-22). Grievance SNU18-00030[3] states:

> This grievance is on the matter that I filed a Disciplinary Appeal form within 15 business days, but the Warden never respond back to my Disciplinary Appeal on the fact that Cpl. Walter, Mark A. lied in the Disciplinary saying I assault am due

---

[1] Defendant Wayne was dismissed from this case on March 1, 2019. (ECF No. 24).
[2] The Court assumes the download referenced was a video of the incident.
[3] Capitalization modified for readability. Spelling was not modified.

> to the stating fact that my disciplinary should have been reversed due to Cpl. Walters has a history of harassment and disorderly conduct behavior and physically aggressive toward jump on mentally ill inmates and no communication skill due to the AD, AR Policys 411 07 surveillance-visual-audio recordings in the Day Clinic Zone 7 approximately 9:30 am between 10:30 and 12:00 pm you would see that Cpl. Walters provoked the altercation by shove me and I did not struck him intil he shove me by defending myself from Cpl. Walters harming me Cpl. Walters said I struck him with a closed fist and did not mention I advised him to dispatch the Lt. are Sgt. to resolved conflict due to procedures.

(*Id*. at 20).  The grievance appeal response states the grievance was rejected because it was a disciplinary matter.  (*Id*. at 21).  The disciplinary hearing action contained a statement from Plaintiff, and found him guilty of several charges, including resisting apprehension and the use of physical force on staff.  (*Id*. at 18).  Plaintiff lost a year of good-time credit due to the conviction. (*Id*.).

Plaintiff's remaining claim proceeds against Defendant only in his personal capacity.  (*Id*. at 4). He seeks compensatory and punitive damages.  He further seeks the expungement or removal of the disciplinary conviction in his ADC records and an internal investigation of the allegations made in his complaint.  (*Id*. at 14).

Defendant Walters filed his Motion for Summary Judgment on September 12, 2019.  (ECF No. 69).  Included as an Exhibit was Plaintiff's appeal for Grievance SNU18-00030.[4]  In that appeal, Plaintiff states:

> This Grievance is not about me receive the Disciplinary it about rehesitated toward my disciplinary appeal from Response from the Warden 2/16/18 due to the F-831-4 appeal process I had 15 day to file and did but never git a fully response back in time to violate my appeal rights due to Cpl. Walters actions.

(ECF No. 71-2 at 2).  In his deposition, Plaintiff testified that he did not receive a response on his disciplinary appeal until he wrote a grievance "due to the fact that they didn't want to

---

[4] Capitalization corrected for readability.  Spelling was not modified.

respond back on the appeal." (ECF No. 71-4 at 32). Plaintiff further testified that his appeal explained that Walters left out many details of what happened in the incident. (*Id*. at 31-32).

Plaintiff filed a Response on September 20, 2019. (ECF No. 73).

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.  ANALYSIS

Defendant Walters argues summary judgment in his favor is appropriate because: (1) Plaintiff failed to exhaust his administrative remedies concerning the Day Clinic incident on

4

February 6, 2018; and (2) Walters acted reasonably when he applied non-deadly force to restore order and discipline to the Day Clinic. (ECF No. 69).

In his Response, Plaintiff references the Incident Report (ECF No. 41-6) filed by Defendants in his Response. Plaintiff alleges that Cassandra Campbell's statement was fabricated, as she was not present until he and Walters were already fighting. (ECF No. 73 at 1; 41-6 at 35-36). Plaintiff further argues that Walters failed to call for a Lieutenant or Sergeant before engaging physically with Plaintiff. (ECF No. 73 at 1). Plaintiff alleges he received a wound in the altercation and did not receive stitches or even a band-aid. (*Id.*). Plaintiff's pre-lockup exam indicated he had some head wounds that were cleansed.[5] Plaintiff alleges he did not get stitches because the security staff were in a rush to lock him up. (ECF No. 73 at 2). Walters was seen by the nurse for his injuries, and then sent to CHI St. Vincent's hospital for further evaluation. (ECF No. 41-6 at 28). Plaintiff makes no reference to Grievance SNU18-00030.

### A. Exhaustion of Administrative Remedies

Based on the summary judgment record before the Court, Plaintiff failed to exhaust his administrative remedies against Defendant Walters concerning the Day Clinic incident on February 6, 2018. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation marks and citation omitted).

---

[5] Photos of Plaintiff's injuries were taken, but the copies provided to the Court were not clear.

The "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. A prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012). The purpose of the exhaustion requirement is to "give the agency a fair and full opportunity to adjudicate their claims." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "Proper exhaustion demands compliance with an agency's deadlines." *Id*.

There is no dispute that the only grievance Plaintiff filed in relation to the Day Clinic incident on February 6, 2018, is Grievance SNU18-00030. (ECF No. 71-3). In the grievance, Plaintiff states he filed a disciplinary appeal, but an unnamed Warden failed to respond to him on it. He states the Warden's response should have reversed the disciplinary conviction because Walters provoked the altercation by shoving him rather than calling for a Lieutenant or Sergeant, and Plaintiff then struck Walters in self-defense. (ECF No. 12 at 20). Plaintiff further states Walters had a history of harassing and being physically aggressive towards mentally ill inmates, presumably to explain his reluctance to accept handcuffs from Walters and his decision to strike Walters instead.[6] (*Id*.). In his deposition, Plaintiff testified that he did not receive a response on his disciplinary appeal until he wrote a grievance "due to the fact that they didn't want to respond back on the appeal." (ECF No. 71-4 at 32). Plaintiff further testified that his appeal explained that Walters left out many details of what happened in the incident. (*Id*. at 31-32). Thus, the subject of his grievance does not appear to be that Walters used excessive force against him. Instead, it

---

[6] Plaintiff filed Motions to Compel requesting Walters' ADC personnel records, including any misconduct or disciplinary notations. (ECF Nos. 38, 40). These Motions were granted, and Defendant Walters' ADC records were filed under seal with the Court. (ECF No. 52). After review of these records, the Court notes that there are no disciplinary notations concerning the mistreatment of inmates, mentally ill or otherwise.

centers on the fact that he had not received a timely and favorable response to his disciplinary appeal.

Further, in his grievance appeal, Plaintiff states only that an unnamed Warden had not responded to his disciplinary appeal, which prevented him from pursuing his rights on the disciplinary appeal concerning Walters' actions. Thus, Plaintiff did not include any statement in his grievance appeal concerning the use of excessive force by Walters against him. (ECF No. 71-2 at 2). ADC Policy Directive 14-16 clearly states that "ONLY THE STATEMENT IN THE SPACE PROVIDED WILL BE MAINTAINED AND CONSIDERED AS PART OF THE APPEAL SUBMISSION." (ECF No. 71-1 at 11). Plaintiff therefore failed to exhaust his administrative remedies for his claim of excessive force against him by Walters. *See Jones*, 549 U.S. at 218 (the prison's requirements define the boundaries of proper exhaustion).

### B. Excessive Force

Even if Plaintiff had exhausted his administrative remedies, the summary judgment record clearly indicates that the use of force employed by Walters was applied in a good faith effort to maintain or restore discipline. "Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). "Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). Relevant factors to be considered for this inquiry include "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible

7

officials, . . .any efforts made to temper the severity of a forceful response," and the extent of injury to the inmate. *Hudson*, 503 U.S. at 7 (internal quotations omitted).

"Not every malevolent touch by a prison guard gives rise to a federal cause of action." *Jones,* 207 F.3d at 495. Even with malicious motivation, "not every push or shove violates the Constitution, but any use of force greater than *de minimis,* or any use of force that is 'repugnant to the conscience of mankind,' does." *Irving*, 519 F.3d at 446 (citing *Hudson*, 503 U.S. at 9-10). While significant injury is not required, "some actual injury must be shown" and the extent of inflicted pain considered. *Jones,* 207 F.3d at 495. "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). "[U]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury." *Johnson v. Bi-State J. Ctr./Arkansas Dept. of Corrections*, 12 F.3d 133, 136 (8th Cir. 1993).

In both his Complaint and his deposition, Plaintiff admits he disobeyed direct orders to submit to handcuffs by Walters and then took physical action to avoid being handcuffed. (ECF Nos. 12 at 6-7; 71-4 at 42-44). He further alleges he struck Defendant Walters. (ECF Nos. 12 at 7; 71-4 at 44). Plaintiff's factual dispute is that Walters shoved him, which provoked the subsequent physical altercation, and then failed to include that shove in the Incident Report and Disciplinary Charge. Plaintiff's factual allegations appear to be correct. In his affidavit, Walters stated he attempted to push Plaintiff into an open holding cell after Plaintiff refused to submit to handcuffs, and Plaintiff stumbled backwards into the door for the cell. Plaintiff then came forward and struck Walters, at which point a physical altercation ensued. (ECF No. 71-5 at 3). Review of the video for the incident supports this version of the story. (ECF No. 71-6). Plaintiff's allegations

8

that Walters left details out of the Incident Report (ECF No. 41-6 at 1) and Disciplinary Charge (ECF No 41-6 at 4) appear to be correct, based on the summary judgment record, as Walters omitted any details concerning the shove from these documents.

This omission, however, is irrelevant to the excessive force analysis before the Court, as Plaintiff admitted that he refused direct orders to submit to handcuffs, and the video shows Plaintiff evading Walters' attempts to reach for him in order to apply the handcuffs. The application of force was therefore necessary to restore order and discipline. Further, Plaintiff provided no allegation indicating that the force used by Walters was repugnant to the conscience of mankind, and the video did not show such an application of force.

As was so aptly stated by the Seventh Circuit:

> Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them.... Inmates are and must be required to obey orders. When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger.

*Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009); *see also Burns v. Eaton*, 752 F.3d 1136, 1140 (8th Cir. 2014) (pepper-spraying an inmate who disobeyed orders and engaged in aggressive acts of defiance was not a case where "a complete absence of a penological purpose" raised "the reasonable inference that the officers acted maliciously in an effort to cause harm"). Unlike many claims of excessive force, there are no disputed issues of material fact here. Plaintiff's conduct in refusing to obey an order and in resisting application of restraints precipitated an application of force to restore order in the facility. The video recording of the incident shows that the force applied was reasonable to the situation created by Plaintiff. Defendant's Walter's less than complete incident report does not change these facts. Summary judgment is therefore proper.

## IV.  CONCLUSION

Accordingly, I recommend that Defendant's Motion for Summary Judgment (ECF No. 69) be GRANTED and Plaintiff's Complaint be DISMISSED WITH PREJUDICE.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **14th day of May 2020**.

/s/ *Barry A. Bryant*
_____
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE